# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

**JIMMY DAVIDSON**                                                                 **PLAINTIFF**

v.                                                                                               **No. 3:18CV18-JMV**

**WARDEN TIMOTHY OUTLAW, ET AL.**                                       **DEFENDANTS**

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Jimmy Davidson, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

The plaintiff, an inmate in the custody of the Mississippi Department of Corrections, appeared before the undersigned for a hearing as set forth in *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985), to determine whether any claims in the present case filed under 42 U.S.C. § 1983 have sufficient merit to proceed. The plaintiff alleges that the defendants subjected him to unconstitutionally harsh general conditions of confinement and delayed his access to medical care after he suffered a fractured hip. For the reasons set forth below, defendants Outlaw, Hill, Mildred, Boyd, Lang and Brown will be dismissed from this case. The plaintiff's claims against defendant Nurse Gail will proceed.

### Factual Allegations

On November 15, 2014, Jimmy Davidson, who was housed at the Marshall County Correctional Facility in Holly Springs, Mississippi, requested placement in a bottom bunk because of his age (51) and deteriorating joints. Warden Timothy Outlaw ignored this request. Case Manager

Jones denied his request, stating that she did not do in-house movements. Unit Sergeant Mildred stated that she would take care of the problem, but she never did.

On December 20, 2014, the plaintiff slipped while climbing down from the top bunk to go take a shower – leaving him in excruciating pain from a fractured hip. A few minutes later, a guard came by for count, and Davidson told him to send for medical staff. Two hours later, Nurse Hill and another nurse arrived with a wheelchair and transported him to medical. Nurse Hill caused the plaintiff pain while lifting him onto the examination table at medical. The nurses called for the doctor, but had to wait 90 minutes for a response. The doctor said to give Mr. Davidson some pain medication, return him to his housing unit, then transport him back to medical in the morning. The medical staff gave him a shot for pain and wheeled him back to his housing unit.

Medical staff did not return the next morning, December 21, 2014. Davidson asked Sgt. Mildred when she came by that morning to please have his breakfast brought to his cell because he could not walk. She stated that she would bring him a breakfast tray that time, but would not do so for future meals. Davidson ate breakfast that day but had to skip lunch because medical had not yet arrived. Case Manager Lang told Sgt. Mildred that Davidson needed to fill out an inmate request form to inform medical of the seriousness of his injury so he could take his meals in his cell. He filled out a request, passed it to Sgt. Mildred, and did not see her again that day.

At 4:20 p.m. medical still had not arrived, and Davidson was in terrible pain. Officer Moore told Davidson that medical had arrived and that he needed to walk up front so they could transport him. He told the officer that he could not walk at all and requested a wheelchair. Medical refused to send a wheelchair, informing him that if he wanted an x-ray, he must walk up front to meet them. Davidson offered to send someone from his unit up front to retrieve a wheelchair, but medical refused, again stating that he must walk up front to be x-rayed. Officer Moore informed Davidson that Nurse

Gail was the one demanding that he walk up front with an injured hip.  As he could not even stand, much less walk, he declined to do so.  He did not get a meal tray that day.

That night his cell mate brought him an eating bowl to relieve his bladder because he could not get up to do so himself.  He did not get a meal tray the next morning (December 22, 2014) – because he could not get out of bed, and dining staff would not bring a tray to his cell.  At 9:30 a.m. on December 22, 2014, medical sent for Davidson, and he again told them that he could not walk – and requested a wheelchair.  An hour later, an officer arrived with a wheelchair and took him to medical.  Soon after, Officer Boyd and another officer transported Davidson to the hospital in Holly Springs to be examined.  He was taken directly to radiology to be x-rayed, and the nurse told them that there was a high probability that he would be transported to another hospital – and that a doctor would arrive soon.  The nurses were waiting for instructions from the doctor.

After 30 minutes, Officer Boyd asked how long it would take, and the nurse said she was still waiting for the doctor, but that Davidson was definitely being transported to another hospital.  Officer Boyd said that she was leaving with Davidson, but the nurse refused.  Officer Boyd again said that she was leaving with Davidson, but two nurses intervened, and Davidson was transported to Baptist Hospital in DeSoto County.  He got to eat breakfast there at 7:00 a.m., his first meal in two days.  Three days later, December 25, 2014, doctors performed surgery, repairing his broken hip with two rods.

Davidson was transported to Parchman eight days later, and the doctors there changed the prescription for painkillers to something milder – which did not help much with the pain.

**Witnesses:  Sergeant Mildred and Officer Moore**

Mr. Davidson stated at his *Spears* hearing that he meant for defendants Sergeant Mildred and Officer Moore to be witnesses, rather than defendants. As such, these two defendants will be dismissed with prejudice from this case.

### Supervisor Liability: Timothy Outlaw and Marjorie Brown

Defendants Warden Timothy Outlaw and Marjorie Brown (with Management Training Corporation) must be dismissed as the plaintiff has sued them only in their capacities as supervisors. A plaintiff proceeding under 42 U.S.C. § 1983 cannot establish that a government official violated the plaintiff's constitutional rights simply by virtue of the official's role as a supervisor. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). For a plaintiff to state a valid claim under § 1983, he must "identify defendants who are either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). A § 1983 plaintiff cannot proceed against a prison official based solely on the official's participation in the prison grievance process. *Dehghani v. Vogelgesang*, 226 Fed.Appx. 404, 406 (5th Cir. 2007). There are only two scenarios in which a supervisor may be held liable under § 1983: (1) when he affirmatively participates in the incident, and (2) when he implements an unconstitutional policy that results in constitutional injury. *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009). Indeed, a federal court cannot hold a supervisor liable for failure to supervise his subordinates – even when he is present on the scene – because, after *Ashcroft v. Iqbal*, 556 U.S. 662, 662, 129 S. Ct. 1937, 1939, 173 L. Ed. 2d 868 (2009), "a government official can be held liable only for his own misconduct." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011).

In this case, the plaintiff does not allege that either Timothy Outlaw or Marjorie Brown had any personal involvement or was causally connected to the incident in any way. As such, defendants

Outlaw and Brown will be dismissed with prejudice from this case for failure to state a constitutional question.

## No Claim Against Case Manager Jones

As to Case Manager Jones, the plaintiff alleges only that she referred his request for a bottom bunk to Sergeant Mildred, who did not address the problem. As set forth above, however, a prison official may not be found liable based solely on her participation in the prison grievance process. *Dehghani v. Vogelgesang*, 226 Fed.Appx. 404, 406 (5th Cir. 2007). These allegations fail to state a valid claim for relief against Case Manager Jones.

## Denial of Medical Treatment

The plaintiff alleges that the defendants in this case denied him adequate medical care by delaying his treatment. In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may a court infer knowledge of substantial risk of serious harm by its obviousness. *Id*. Negligent conduct by prison

officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986).

In cases such as this, arising from delayed medical attention rather than a clear denial of medical attention, a plaintiff must demonstrate that he suffered substantial harm resulting from the delay in order to state a claim for a civil rights violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Campbell v. McMillin*, 83 F. Supp. 2d 761 (S. D. Miss. 2000). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

"Deliberate indifference is not established when medical records indicate that [the plaintiff] was afforded extensive medical care by prison officials." *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015). Nor is it established by a physician not accommodating a prisoner's requests in a manner he desired or the prisoner's disagreement with the treatment. *Id.*; *Miller v. Wayback House*, 253 F. App'x 399, 401 (5th Cir. 2007). To meet his burden in establishing deliberate indifference on the part of medical staff, the plaintiff "must show that [medical staff] refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brauner*, 793 F.3d at 498.

## No Claim Against Officer Boyd

The plaintiff alleges that Transport Officer Boyd attempted to return him to the prison before he could receive medical treatment at the hospital. However, defendant Boyd was unsuccessful in doing so. As such, the plaintiff's allegations against her must be dismissed for failure to state a claim

upon which relief could be granted.

## No Claim Against Nurse Hill

The plaintiff alleges that, upon the plaintiff's arrival at medical, Nurse Hill lifted him from his wheelchair onto the examination table, causing pain to his fractured hip. Merely lifting an injured patient onto an examination table does not rise to the level of "wanton disregard for any serious medical needs." *Brauner*, 793 F.3d at 498. This allegation fails to state a constitutional question and will be dismissed.

## No Claim Regarding Lack of Food

Mr. Davidson went without food for approximately 48 hours during the time he waited for medical treatment – from breakfast at the prison on December 21, 2104, until breakfast at the hospital 7:00 a.m. on December 23, 2014. The time from breakfast on December 21 until he arrived at the hospital, approximately noon on December 22, can be attributed to the defendants. However, once Mr. Davidson was in the care of the hospital, the delay must be attributed to the hospital – which is not a state actor and is thus not subject to suit under 42 U.S.C. § 1983. Thus, the defendants deprived Mr. Davidson of food for approximately 29 hours – from 7:00 a.m. on December 21, 2014, until noon on December 22, 2014. As discussed below, such a deprivation does not rise to the level of a constitutional violation.

"[T]he Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir.1989), *cert. denied*, 493 U.S. 969 (1989)(citation omitted). "Inmates cannot expect the amenities, conveniences, and services of a good hotel." *Id.* at 849 n.5 (citation omitted). Prison officials have certain duties under the Eighth Amendment, but these duties are only to provide prisoners with "humane conditions of confinement," including "adequate food,

clothing, shelter, and medical care . . . ." *Woods v. Edwards*, 51 F.3d 577, 581 n.10 (5th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

Deprivation of food constitutes cruel and unusual punishment *"only* if it denies a prisoner the 'minimal civilized measure of life's necessities.'" *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998) (emphasis added). "[I]nmates must be provided nutritionally adequate food, prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." *Shrader v. White*, 761 F.2d 975 (4th Cir. 1985); *see also Davis v. Missouri*, 389 Fed. Appx. 579, 579-80 (8th Cir. 2010)(designated unpublished); *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986). A prisoner is entitled only to reasonably adequate food. *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985).

The denial of food can rise to the level of a constitutional violation depending on the severity of the food deprivation. *See e.g.*, *Atkins v. City of Chicago*, 631 F.3d 823, 830 (7th Cir. 2011) ("Depriving a person of food for four days would impose a constitutionally significant hardship.") A court must assess the amount and duration of the deprivation to make this determination. Weight loss may be evidence that a prisoner received constitutionally inadequate food. *See Obama v. Burl*, 477 Fed. App'x. 409, 412 (8th Cir. 2012) (per curiam) (designated unpublished); *Divers v. Dep't. of Corrections*, 921 F.2d 191, 194 (8th Cir. 1990). "The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *Hamm*, 774 F.2d at 1575.

In this case, Mr. Davidson went without food for approximately 29 hours while in the care and custody of the Marshall County Correctional Facility. The court understands Mr. Davidson's frustration with having to deal with hunger during his lengthy wait for medical care; however, this deprivation does not rise to the level of a constitutional violation, especially given

the hospital's decision not to provide Mr. Davidson with a meal until the morning of December 23, 2014. This allegation will be dismissed for failure to state a claim upon which relief could be granted. Further, as Case Manager Lang participated in the events of this case solely in relation to Mr. Davidson's claim regarding deprivation of food, he will be dismissed with prejudice from this case.

### Negligence

The plaintiff's allegations against the defendants for failing to recognize the fall risk he faced while assigned to a top bunk sound wholly in negligence. However, negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). As such, his claims regarding placement on a top bunk must be dismissed for failure to state a claim upon which relief could be granted.

### Claims Going Forward

The plaintiff's claim against Nurse Gail for demanding that he walk to medical with a broken hip in order to receive x-rays will, however, proceed.

### Conclusion

For the reasons set forth above:

(1) Defendants Sergeant Mildred and Officer Moore will be dismissed with prejudice from this case, as the plaintiff intends them to be witnesses, rather than defendants;

(2) Defendants Timothy Outlaw and Marjorie Brown will be dismissed with prejudice from this case, as the plaintiff has sued them only in their capacity as supervisors;

(3) Defendant Case Manager Jones will be dismissed with prejudice from this case, as she participated in the events only through the prison grievance process;

(4) Defendant Officer Boyd will be dismissed with prejudice from this case, as her actions did not cause the plaintiff any harm;

(5) Defendant Nurse Hill will be dismissed with prejudice from this case, as he merely lifted the plaintiff from his wheelchair onto the examination table;

(6) The plaintiff's claims regarding denial of adequate food will be dismissed with prejudice, as the defendants deprived him of food for only 29 hours, which is an insufficient deprivation to state a constitutional claim;

(7) Defendant Case Manager Lang will be dismissed with prejudice from this case, as she participated only regarding the plaintiff's claim of denial of adequate food, which will be dismissed;

(8) The plaintiff's claims regarding failure to recognize the fall risk he posed when assigned to a top bunk will be dismissed with prejudice, as such conduct sounds wholly in negligence and fails to state a constitutional claim; and

(9) The plaintiff's claims against Nurse Gail for denial of adequate medical care (requiring him to walk to medical with a broken hip in order to receive treatment) will proceed.

**SO ORDERED**, this, the 16th day of July, 2019.

/s/ Jane M. Virden
UNITED STATES MAGISTRATE JUDGE